UNITED STATES DISTRICT COURT JUDGE ANDERSEN
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 09 CR 1040 |
| | ) | |
| v. | ) | Violations: Title 18, United States Code, Sections 1344 and 1014 |
| | ) | |
| ROMEL ESMAIL and | ) | MAGISTRATE JUDGE COLE |
| BASSAM HAJ YOUSIF | ) | |

FILED
12-17-09
DEC 17 2009
MAGISTRATE JUDGE MARIA VALDEZ
UNITED STATES DISTRICT COURT

## COUNT ONE

The SPECIAL JANUARY 2009 GRAND JURY charges:

1. At times material to this indictment:

    (a) Defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF were the sole members of Global Real Estate Investors, LLC, ("Global"), an Illinois limited liability company, located in Chicago, IL;

    (b) Defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF jointly held power of direction over North Star Trust Company, Trust number 99-2200 ("Trust 99-2200"), an Illinois land trust with Global as its beneficiary;

    (c) Defendant ROMEL ESMAIL was president of Construction Services International, Inc., an Illinois corporation which engaged in the business of being a general contractor;

    (d) Defendant ROMEL ESMAIL and BASSAM HAJ YOUSIF were the sole members of Transworld Holdings LLC ("Transworld"), an Illinois limited liability company, located in Chicago, IL;

(e) Defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF were the sole members of Deutsche Investment Holding LLC ("Deutsche"), an Illinois limited liability company, located in Chicago, IL; and

(f) CIB Bank, located in Hillside, Illinois and elsewhere, was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"), which made loans. The borrower's equity and the purchase price of the property to be acquired with the proceeds of the loan were material to CIB Bank's determination as to whether to make a commercial loan and the terms of the loan.

2. Beginning in approximately October 1999 and continuing through September 2003, in Chicago and Hillside, in the Northern District of Illinois and elsewhere,

ROMEL ESMAIL and
BASSAM HAJ YOUSIF,

defendants herein, did knowingly participate in a scheme and artifice to defraud CIB Bank, and to obtain moneys and funds owned by and under custody and control of CIB Bank, by means of materially false and fraudulent pretenses and representations as further described below.

3. It was a part of the scheme to defraud that defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF caused and attempted to cause CIB Bank to lend money for the acquisition and development of property by falsely representing the sales price of the property and defendants' cash equity in the transaction and caused and attempted to cause CIB Bank to lend additional funds for the development of property by falsely representing

that the funds were for the repayment of expenses incurred in developing the property.

**Original Acquisition Loan for the Purchase and Development of 6 North Michigan**

4. It was further part of the scheme that beginning in approximately October 1999 and continuing through December 1999, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF applied for a commercial loan of approximately $13 million from CIB Bank for the purchase and development of 6 North Michigan, by falsely representing to CIB Bank that defendants were purchasing 6 North Michigan for approximately $17 million, defendants well knowing that they had an agreement to purchase 6 North Michigan for approximately $13 million.

5. It was further part of the scheme that in about December 1999, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF submitted to CIB Bank a fraudulent Purchase and Sale Agreement which falsely represented that the defendants, through Global, were purchasing 6 North Michigan for $17,060,000 from a fictitious seller.

6. It was further part of the scheme that in approximately December 1999, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF falsely represented to CIB Bank that defendants were providing at least $4,262,500 cash equity towards the purchase of 6 North Michigan.

7. It was further part of the scheme that on or about December 29, 1999, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF fraudulently caused CIB Bank to lend Global and Trust 99-2200 approximately $13 million for the purchase of 6 North

Michigan property.

8. It was further part of the scheme that on or about December 29, 1999, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF submitted to CIB Bank a fraudulent closing statement which falsely represented that the defendants, through Global and Trust 99-2200, purchased 6 North Michigan for $17,060,000 from a fictitious seller.

### First Amendment to Original Acquisition Loan for 6 North Michigan

9. It was further part of the scheme that on or about July 17, 2000, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF sought and obtained an amendment to the original acquisition loan under which CIB Bank agreed to lend Global and Trust 99-2200 an additional sum of $4,000,000 for the purpose of paying certain demolition and clean up expenses on 6 North Michigan.

10. It was further part of the scheme that on or about July 26, 2000, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF made and caused to be made materially false representations to CIB Bank, namely Sworn Statements and related documents which falsely represented that certain work had been performed on 6 North Michigan, in support of defendant request for disbursement of approximately $4 million in loan proceeds, defendants well knowing that not all of the described work had been performed.

11. It was further part of the scheme that on or about July 27, 2000, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF fraudulently caused CIB Bank to disburse to Construction Services International a total of approximately $4 Million, of which

defendants used at least approximately $1.3 million for defendants' benefit, including purchasing real estate, purchasing a vehicle for defendant ROMEL and funding defendant ROMEL's investment account.

### Second Amendment to Original Acquisition Loan for 6 North Michigan

12. It was further part of the scheme that on or about December 14, 2000, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF sought and obtained a second amendment to the original acquisition loan under which CIB Bank agreed to lend Global and Trust 99-2200 an additional sum of $4.5 million for the 6 North Michigan project.

13. It was further part of the scheme that on or about December 15, 2000, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF made and caused to be made materially false representations to CIB Bank, namely Sworn Statements and related documents which falsely represented that certain work had been performed on 6 North Michigan, in support of defendant request for disbursement of approximately $4.5 million in loan proceeds, defendants well knowing that not all of the described work had been performed.

14. It was further part of the scheme that on or about December 15, 2000, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF fraudulently caused CIB Bank to disburse to Construction Services International a total of approximately $4.5 Million, of which defendants used at least approximately $2.3 million for defendants' benefit, including purchasing real estate, purchasing jewelry for defendant ROMEL and funding defendant

ROMEL's investment account.

**Original Acquisition Loan for the Purchase and Development of 59 East Van Buren**

15. It was further part of the scheme that from approximately June 2000 and continuing through in or about August 2000, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF applied for a commercial loan of approximately $8 million from CIB Bank for the purchase and development of 59 East Van Buren, by falsely representing to CIB Bank that defendants were purchasing 59 East Van Buren for approximately $13 million, defendants well knowing that they had an agreement to purchase 59 East Van Buren Michigan for approximately $8 million.

16. It was further part of the scheme that on or about August 15, 2000, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF submitted to CIB Bank fraudulent Purchase and Sale Agreements which falsely represented that the defendants, through Transworld and Deutsche, were purchasing 59 East Van Buren for a total of approximately $13 million.

17. It was further part of the scheme that on or about August 15, 2000, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF falsely represented to CIB Bank that the defendants, Transworld and Deutsche were providing at least $6,392,000 cash equity towards the purchase of 59 East Van Buren.

18. It was further part of the scheme that on or about August 15, 2000, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF fraudulently caused CIB Bank to lend the defendants, Transworld and Deutsche approximately $8 million for the purchase of 59 East

Van Buren.

19. It was further part of the scheme that on or about August 15, 2000, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF submitted to CIB Bank fraudulent closing statements which falsely represented that the defendants, Transworld and Deutsche, purchased 59 East Van Buren for a total of approximately $13 million.

### Construction Loan for 6 North Michigan

20. It was further part of the scheme that on or about June 25, 2001, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF applied for and obtained a construction loan from CIB Bank in the amount of approximately $44 million to Global and Trust 99-2200 to payoff the original acquisition loan and amendments and to fund the renovation and conversion of 6 North Michigan into condominiums.

21. It was further part of the scheme that from on or about June 26, 2001 through on or about August 28, 2001, defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF made and caused to be made materially false representations to CIB Bank, namely Sworn Statements and related documents which falsely represented that certain work had been performed on 6 North Michigan, in support of defendant request for disbursement of a total of approximately $7.9 million in construction loan proceeds, defendants well knowing that not all of the described work had been performed.

22. As a result of the scheme, defendants ROMEL ESMAIL and BASSAM HAJ

YOUSIF caused the disbursement of approximately $56 million in loan proceeds from CIB Bank related to 6 North Michigan and 59 East Van Buren, which loans went into default.

23. It was further part of the scheme that defendants ROMEL ESMAIL and BASSAM HAJ YOUSIF did misrepresent, conceal and hide and cause to be misrepresented, concealed and hidden the true purpose of the acts done in furtherance of the scheme.

24. On or about December 29, 1999, in the Northern District of Illinois, Eastern Division, and elsewhere,

>ROMEL ESMAIL and
>BASSAM HAJ YOUSIF,

defendants herein, did knowingly execute and attempt to execute the above-described scheme by causing CIB Bank to disburse approximately $13.6 million in loan proceeds to acquire 6 North Michigan Avenue, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1344.

## COUNT TWO

The SPECIAL JANUARY 2009 GRAND JURY further charges:

1. Paragraphs 1 through 23 of Count One of this indictment are realleged and incorporated herein as if fully restated herein.

2. On or about August 15, 2000, in the Northern District of Illinois, Eastern Division, and elsewhere,

> ROMEL ESMAIL and
> BASSAM HAJ YOUSIF,

defendants herein, did knowingly execute and attempt to execute the above-described scheme by causing CIB Bank to disburse approximately $8 million in loan proceeds to acquire 59 East Van Buren, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1344.

## **COUNT THREE**

The SPECIAL JANUARY 2009 GRAND JURY further charges:

On or about December 29, 1999, in the Northern District of Illinois, Eastern Division,

ROMEL ESMAIL and
BASSAM HAJ YOUSIF,

defendants herein, did knowingly make false statements for the purpose of influencing the actions of CIB Bank, a financial institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, namely, in order to induce CIB Bank to disburse loan proceeds in the amount of $13,640,000 secured by real estate located at 6 North Michigan Avenue, Chicago, Illinois, defendants tendered and caused to be tendered to CIB Bank a fraudulent closing statement which falsely represented that the defendants, through Global and Trust 99-2200, purchased 6 North Michigan for $17,060,000 from a fictitious seller;

In violation of Title 18, United States Code, Section 1014.

## COUNT FOUR

The SPECIAL JANUARY 2009 GRAND JURY further charges:

On or about July 27, 2000, in the Northern District of Illinois, Eastern Division,

ROMEL ESMAIL and
BASSAM HAJ YOUSIF,

defendants herein, did knowingly make false statements for the purpose of influencing the actions of CIB Bank, a financial institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, namely, in order to induce CIB Bank to disburse loan proceeds in the amount of $4,000,000 secured by real estate located at 6 North Michigan Avenue, Chicago, Illinois, defendants tendered and caused to be tendered to CIB Bank a Sworn Statement for Contractor and Subcontractor to Owner and related waivers of lien which falsely represented that Company A was entitled to payment of $1,050,000 for asbestos abatement and $825,000 for interior demolition on the 6 North Michigan Avenue property, and Company B was entitled to payment of $510,000 for exterior masonry cleaning, $275,000 for scaffolding, $198,000 for masonry repair and replacement, and $168,982 for exterior stone restoration, whereas in truth and fact, a defendants well knew that Company A and Company B had not performed said work nor provided materials or labor in those amounts;

In violation of Title 18, United States Code, Section 1014.

## **COUNT FIVE**

The SPECIAL JANUARY 2009 GRAND JURY further charges:

On or about December 15, 2000, in the Northern District of Illinois, Eastern Division,

ROMEL ESMAIL and
BASSAM HAJ YOUSIF,

defendants herein, did knowingly make false statements for the purpose of influencing the actions of CIB Bank, a financial institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, namely, in order to induce CIB Bank to disburse loan proceeds in the amount of $4,500,000 secured by real estate located at 6 North Michigan Avenue, Chicago, Illinois, defendants tendered and caused to be tendered to CIB Bank a Sworn Statement for Contractor and Subcontractor to Owner and accompanying waivers of lien which falsely represented that Company A was entitled to payment of $890,000 for asbestos abatement and $629,750 for interior demolition on the 6 North Michigan Avenue property, and Company B was entitled to payment of $270,000 for exterior masonry cleaning, $225,000 for masonry repair and replacement, and $119,000 for exterior stone restoration, whereas in truth and fact, as defendants well knew, that Company A and Company B had not performed said work nor provided materials or labor in the amounts claimed;

In violation of Title 18, United States Code, Section 1014.

## **FORFEITURE ALLEGATION**

The SPECIAL JANUARY 2009 GRAND JURY further charges:

1. The allegations contained in Counts One and Four of this Indictment are realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982.

2. As a result of their violations of Title 18, United States Code, Sections 1344 and 1014, that is bank fraud and false statements to financial institutions, as alleged in the foregoing indictment,

ROMEL ESMAIL and
BASSAM HAJ YOUSIF,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any and all right, title, and interest they may have in any property, real and personal, constituting, and derived from, proceeds obtained, directly and indirectly, from bank fraud and false statements to financial institutions in connection with CIB Bank, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 982.

3. The interests of the defendants jointly and severally subject to forfeiture pursuant to Title 18, United States Code, Section 982, include: all money and other property that was the subject of each transaction; constituted and was derived from the proceeds of each transaction and was obtained, directly and indirectly, as a result of those violations, including but not limited to:

    (a) Approximately $56,000,000;

4. If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendant(s):

    (a) Cannot be located upon the exercise of due diligence;

    (b) Has been transferred or sold to, or deposited with, a third party;

    (c) Has been placed beyond the jurisdiction of the Court;

    (d) Has been substantially diminished in value; or

    (e) Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982.

A TRUE BILL:

_____
UNITED STATES ATTORNEY